IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HOLLY A. CHANDLER, | ) | Case No. 1:03 CV2057 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Judge Ann Aldrich |
| | ) | |
| THE VILLAGE OF CHAGRIN FALLS, et al., | ) ) | |
| Defendants. | ) | MEMORANDUM AND ORDER |

This is a civil rights case, in which plaintiff Holly A. Chandler ("Chandler") seeks relief under 42 U.S.C. § 1983 for alleged violations of her constitutional rights – including equal protection, due process of law, the "right to protect one's property," and the rights "to liberty, health, safety, privacy and welfare." Chandler also advances various state law claims. Defendants are the Village of Chagrin Falls, including seven Village Council members (collectively, "the Village"), and Chandler's neighbors, P. James Kamer Jr. ("Kamer") and Pamela Hultin ("Hultin"). Now before the court are motions for summary judgment under Federal Rule of Civil Procedure 56(c), filed by Chandler (Docket Nos. 54 & 64), the Village (Docket No. 42), and Kamer and Hultin (Docket No. 48). For the following reasons, this court denies the motions filed by Chandler, grants the Village's motion in part, and grants Kamer and Hultin's motion in part.

**I. Background**

The Village of Chagrin Falls is governed by a mayor, a seven-member Council, administrative officials, and various committees, commissions and boards, including the Architectural Review Board ("ARB"). The ARB is composed of three professional architects and two lay (resident) members. The ARB is responsible for the oversight, review and approval of all architectural building issues that arise within the Village. Chandler is a resident of the Village and a lay member of the ARB. Chandler's claims arise out of her efforts to obtain a building permit for construction of a garage approximately twenty-two feet in height on her property.

Prior to April of 2003, §1125.04(a)(6) of the Village's Codified Ordinances limited garage heights to a maximum of fifteen feet. On April 28, 2003, the Village Council responded to a number of requests for construction of garages in excess of fifteen feet high by amending §1125.04(a)(6). The section now states:

> No accessory building shall exceed one story. The maximum height above finished grade shall be limited to fifteen feet. The Architectural Review Board may approve a height of up to but not exceeding twenty-two feet for detached garages to allow roof pitches that are architecturally compatible with the main building on the lot.

*See* Docket No. 54, Exhibit B.

After consulting an architect, Chandler decided to demolish her existing garage and to build a new twenty-two foot garage, including a permanent staircase, in its place. On May 9, 2003, Chandler submitted her plans to the ARB for review. Because Chandler is a member of the ARB, she recused herself from consideration of the matter.

The ARB determined that Chandler's proposal complied with the Village's Codes and that it was

-2-

architecturally compatible with the rest of the structures in the area. Thus on May 20, 2003, the ARB approved Chandler's plans and granted her a building permit. However, the Village's Chief Administrative Officer, Benjamin Himes ("Himes") apparently thought that Chandler's plan to build a permanent staircase might render her garage a structure in excess of one story, as prohibited by §1125.04(a)(6). Himes instructed Chandler that she needed to obtain a variance for the staircase from the Board of Zoning Appeals ("BZA").

The BZA met on July 7, 2003 in order to discuss Chandler's variance request. Several residents attended the meeting and complained about details of the structure that were not related to the staircase. The BZA did not decide the variance issue at that meeting, but instead decided to remand the entire matter to the ARB for further consideration. On July 8, 2003, Chandler withdrew her request for the staircase in order to resolve the variance issue. She decided to install a pull-down staircase in place of the permanent one. On July 14, 2003, Chandler was issued her building permit, numbered 03-127.

On July 15, 2003, Kamer and Hultin sent the Village a letter voicing their objection to the approval of Chandler's building permit. On July 16, 2003, the Village notified Chandler that Kamer and Hultin had filed an "appeal" of the ARB's decision granting the permit and that a hearing would be held before the BZA on August 4, 2003. Chandler also received a letter from Himes dated July 16, 2003, notifying her that she could proceed with construction "at her own risk," noting the possibility that the BZA could find that the ARB's approval of her permit was an error. As a result, Chandler halted construction on her garage.

On August 4, 2003, the BZA ruled against Kamer and Hultin in their supposed appeal. Chandler then instructed her contractor to resume construction, so that the garage's roof could be completed before

the arrival of winter.  The Village Council met on August 8, 2003 to further discuss the matter, and set another meeting for September 8, 2003.  The ARB was ordered to attend both the BZA meeting on August 4, 2003 and the Council meeting on August 8. At both meetings, the ARB was asked to explain its reasons for granting Chandler's permit.

The ARB also articulated its reasoning for granting Chandler's permit at the Council meeting of September 8, 2003. After that meeting the Council revoked Chandler's building permit and remanded the matter to the ARB for further consideration of their May 20, 2003 decision. On September 9, 2003, Chandler received a "Stop Work Notice" from the Village. Himes, however, sent Chandler a letter two days later, informing her that, notwithstanding the Village's notice, she could complete the "caulking, priming, and other weather sealing necessary" to protect the garage from the effects of winter weather.

At its September 16, 2003 meeting, the ARB reviewed its May 20, 2003 decision and again approved Chandler's plans for her garage.  The Village Council, however, held another meeting on September 22, 2003, after which they again remanded the matter to the ARB. The ARB met on October 6, 2003, and re-approved Chandler's plans.  On October 13, 2003, Chandler filed this suit.  That same day, the Village Council re-issued Chandler's permit.

## II. Discussion

Chandler claims that the ARB had the sole discretion to determine whether to grant her a building permit, and that neither the Village Council nor the BZA is vested with the authority to challenge or review the ARB's decisions. Chandler further alleges that access to the Village's appeals process is limited to "applicants" who are denied a permit.  Thus, Chandler asserts that Kamer and Hultin had no right to appeal the ARB's decision and that she was deprived of her constitutional rights when Village officials entertained

-4-

their allegedly wrongful appeal.

Chandler also claims that her garage suffered damage because it was not completed before the onset of winter. Chandler further submits that the Village disregarded its Law Director's recommendation that Chandler's permit be granted and that Kamer and Hultin's appeal be denied for lack of standing.

In addition to the civil rights claims noted *supra*, Chandler's twelve-count complaint includes claims against the Village of conspiracy, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. Chandler further submits that the Village is guilty of an unlawful taking of property without just compensation. Chandler asserts that Kamer and Hultin are also guilty of several of these violations because their actions were "cloaked under color of law." Finally, Chandler alleges that Kamer and Hultin are liable for tortious interference with property rights.[1] Chandler seeks compensatory and punitive damages, as well as recovery of her costs, including attorney's fees.

The Village asserts that Chandler's claims are moot and also advances several affirmative defenses, including absolute and qualified immunity. Kamer and Hultin deny all of Chandler's allegations and bring counterclaims of trespass and "abuse of process" against Chandler. Kamer and Hultin also assert cross-claims against the Village for indemnification and for alleged violations of 42 U.S.C. § 1983.

**A. Standard of Review**

Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

---

[1] Chandler has dismissed her claims against Kamer and Hultin for continuing nuisance and for continuing and permanent trespass. *See* Docket No. 33.

P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004).

If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e):

> An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this Court must view the evidence in a light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248. Determination of whether an issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases, the Court must decide whether the evidence is such that a reasonable juror "could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.* at 252. Rule 56(c) "mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**B. Chandler's Claims Against the Village**

    1. Equal Protection

To state a claim for a constitutional violation under the equal protection clause of the Fourteenth Amendment, "a §1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000), quoting *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990).

Chandler makes no such allegations. Instead, the arguments advanced by Chandler closely resemble those made in *Terrace Knolls, Inc, v. Dalton, Dalton, Little, and Newport, Inc.*, 571 F. Supp. 1086 (N.D. Oh. 1983), in which the plaintiff alleged that its equal protection rights were violated without advancing any specific facts in support of the claim. The *Dalton* court found "[n]othing in the complaint [that] allege[d] a violation of the fundamental tenet of equal protection: that all persons similarly situated shall be treated alike." *Id*. at 1093, citing *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); *Plyer v. Doe*, 457 U.S. 202, 216 (1982). Chandler likewise invokes "neither a fundamental interest nor a suspect classification " in her equal protection claim. *Id*. at 1094.

Chandler does claim that because she is a female member of the ARB, she is a member of a protected class. However, Chandler does not allege that a disproportionately small number of ARB members are female, nor does she postulate the existence of a history of discrimination against female ARB

-7-

members.[2] Again, to support her equal protection claim, Chandler must demonstrate "intentional discrimination against [her] because of [her] membership in a particular class, not merely that [s]he was treated unfairly as an individual." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). It is clear from the record before the court that Chandler's claims of mistreatment cannot be tied to any such intentional discrimination.

Furthermore, Chandler's assertion that she is similarly situated to another Village applicant, named "Carpenter," whom she alleges was treated differently in similar circumstances is not enough to support her claim. *See F.S. Royster Guano*, 253 U.S. at 415. For instance, Carpenter appeared before the BZA, not the ARB, and Carpenter's application for a variance occurred prior to the amendment to §1125.04 (a)(6).

Because Chandler offers no evidence, beyond bare assertions, of her membership in a protected class, the court finds that no genuine issue of material fact exists on this issue. Any argument that Chandler was treated unfairly as an individual can be addressed by means of her due process claim. Accordingly, the court grants summary judgment in favor of the Village on Chandler's equal protection claims.

2. Due Process

The due process clause of the Fourteenth Amendment requires that "state action, whether through one agency or another[,] be consistent with the fundamental principles of liberty and justice which lie at the base of our civil and political institutions and not infrequently are designated as the law of the land." *Hebert*

---

[2] In fact, it appears highly unlikely that Chandler could reasonably make such claims. For example, the court understands that three of the five current ARB members are female. The composition of the ARB at the time of Chandler's permit dispute appears to have been the same.

-8-

*v. Louisiana*, 272 U.S. 312, 316-17 (1926); *see also Burks v. Egeler*, 512 F.2d 221, 226 (6th Cir. 1975).

The Village cites *Owen v. City of Independence, Missouri*, 445 U.S. 622 (1980) in support of its contention that the process due Chandler includes notice, representation of counsel, and the opportunity to respond. The Village thus asserts that because Chandler was represented by counsel and given both adequate notice of appeal and the opportunity to respond, she received all of the process due under the law.

The Village's argument fails to address the crux of Chandler's due process claim. To wit: "[a] government's failure to follow its own ordinances or regulations may constitute a deprivation of property without due process." *Banks v. City of E. Cleveland*, 1997 U.S. App. LEXIS 1735, *4 (6th Cir. Jan. 29, 1997), citing *Derrickson v. Board of Educ.*, 703 F.2d 309, 315 (8th Cir. 1983). As the court noted in *Joy v. City of Dayton*, 1991 U.S. Dist. LEXIS 21765 (S.D. Oh. 1991): "The failure of a governmental agency to follow its own procedures [may] presen[t] a question of constitutional proportions [when] the failure deprives a plaintiff of liberty, property or other federally protected rights." *Id.* at *28. It is clear from the materials before the court that a genuine issue of material fact exists regarding whether the Village's failures deprived Chandler of such rights.

For example, Chandler claims that she was deprived of property as a result of the employment of counsel – a step she would not have been required to take had the Village followed the procedures established by its own laws. Chandler claims a similar deprivation as a result of the Village entertaining Kamer and Hultin's illegitimate appeal. Overall, Chandler asserts that she was forced to endure numerous

-9-

stages of an unusual or even unprecedented legal process. As a result, Chandler claims she was deprived of the use of her property, that she incurred damage to her garage, and that she sustained a significant financial loss.

As Chandler indicates, §1125.04(a)(6) of the Village's Ordinances allows the ARB to approve garages up to twenty-two feet in height. The Village has failed to set forth any authority under which the Council and the BZA may review ARB decisions. Rather, the depositions in this case, including those of Village officials, indicate that there is no authority to review ARB decisions and that the ARB is vested with sole discretion in such matters. Village Ordinance §1111.11 states: "following a decision of the Board of Zoning Appeals, each case shall be referred to Council. After reviewing the Board's decision, council may confirm, amend or reverse the decision by a majority vote of its membership." Section 1111.11 does not appear to grant the Council authority to remand any matter to the ARB.

Chandler raises similarly compelling questions with regard to the treatment of her neighbors' objections. Besides the act of appealing an ARB decision to the BZA, Chandler challenges Kamer and Hultin's standing to appeal an ARB decision concerning her garage, as well as the timing of the neighbors' appeal. (Codified Ordinance §1111.03 prescribes a thirty day window for appeal of BZA decisions. Kamer and Hultin endeavored to appeal a May 20, 2003 decision on July 13, 2003.) The court finds that the willingness of Village authorities to entertain such an appeal raises genuine issues of material fact concerning the process afforded Chandler. Therefore, Chandler has presented evidence sufficient to survive a summary judgment motion on her due process claim.

3. Additional § 1983 Claims

Chandler also asserts a somewhat bizarre claim for violation of her "right to protect one's property." The federal courts do not appear to recognize such a cause of action and Chandler presents no case law, either in support of this claim or distinguishing it from her due process claim. Therefore, this court finds that no genuine issues of material fact exist and enters summary judgment in favor of all defendants on Count Three of Chandler's complaint.

Similarly, Chandler's final claim under 42 U.S.C. § 1983 is that the Village deprived her of her rights to "liberty, health, safety, privacy and welfare." Chandler, however, offers no factual support for this claim or any argument that it is distinguishable from the due process allegations detailed *supra*. The court therefore enters summary judgment in favor of all defendants on this claim.

4. Taking of Property without Just Compensation

Chandler contends that the Village's actions constitute a regulatory taking because the Village deprived her of the use of her property for four months without just compensation. "A land use regulation does not effect a taking if it substantially advances a legitimate state interest and does not deny an owner all economically viable use of his land." *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994), citing *Agins v. City of Tiburon*, 447 U.S. 255, 260 (1980). The Village's interest in preserving its historical character and uniform design qualify as legitimate. "[T]his Court has recognized, in a number of settings, that States and cities may enact land use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city." *Penn. Central Transp. Co. v. New York City*, 438 U.S. 104, 129 (1978)(citations omitted).

Chandler submits that she commenced work on the garage but that she was forced to stop due to

-11-

the issuance of a "Stop Work Order." However, the record also indicates that the Village allowed Chandler to take actions necessary to support the existing structure of the garage and to protect the project from winter weather. These facts demonstrate that Chandler was not deprived of all economically viable use of her land for four months. In combination with the court's finding that the ARB and related entities were operating in furtherance of a legitimate interest, they compel the conclusion that Chandler cannot sustain her claim for an illegitimate taking.

### 5. Conspiracy

*Riddle v. Egensperger*, 266 F.3d 542 (6th Cir. 2001) states that the essential elements of a conspiracy claim under 42 U.S.C.S. §1985 are:

> (1) a conspiracy, (2) for depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of the equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) whereby a person is either injured in his person or property or deprived of any right or privilege of the United States.

*Id.* at 549.

As the court has noted, no genuine issues of material fact remain as to any potential equal protection violations. Chandler does not assert a denial of her right to "equal privileges and immunities under the law." Thus she cannot hope to satisfy the second element of a §1985 conspiracy claim. The court therefore orders summary judgment in favor of all defendants on this claim as well.

### 6. State law claims – infliction of emotional distress and negligence

To maintain a cause of action for intentional infliction of emotional distress, a plaintiff must establish: (1) that the defendant intended to cause emotional distress or knew or should have known that its act would

-12-

result in serious emotional distress; (2) that the defendant's conduct was so extreme and outrageous as to go "beyond all bounds of human decency" and to be characterizable as "utterly intolerable in a civilized community;" (3) that the defendant's actions were the proximate cause of her psychic injury; and (4) that her mental anguish was "serious and of a nature that no reasonable [person] could be expected to endure it." *Ashcroft v. Mt. Sinai Medical Ctr.* 588 N.E.2d 280, 284 (Ohio Ct. App. 1990).

Although Chandler lists these elements, her allegations fail to satisfy them. For example, Chandler cites *McNeil v. Case W. Reserve Univ.,* 664 N.E.2d 973 (Ohio Ct. App. 1995), in support of her contention that the Village's conduct went "beyond all bounds of human decency." In *McNeil*, however, the court held that alleged threats of assault against an employee demonstrated at most that the employee was "upset, angry, [and] had feelings of distress, anxiety and fear." The threats did not, however, cause "the serious emotional injury contemplated by the tort of intentional infliction of emotional distress." *Id*. at 977. "Serious emotional distress describes emotional injury which is both severe and debilitating." *Id.*

Likewise, Chandler's allegations that she was harmed by the allegedly unorthodox procedures of Village governance give rest, at most, to the conclusion that she has suffered feelings of distress, anxiety, and fear. Nothing in the record supports the conclusion that Chandler has suffered severe or debilitating emotional injury. (In fact, unlike the plaintiff in *McNeil*, Chandler has offered no medical evidence in support of her contentions.)

Chandler "cannot rely on unspecific allegations of harassment in order to defeat a motion for summary judgment." *Id*. at 976. Accordingly, the court finds that no genuine issues of material fact exist with regard to her claim for intentional infliction of emotional distress.

Chandler also asserts that the Village is liable for negligent infliction of emotional distress. However, Chandler has cited no case – nor could the Court identify any case – with facts similar to this one in which a plaintiff was able to maintain a claim for negligent infliction of emotional distress. The court likewise finds no issues of material fact, and grants summary judgment to all defendants on this claim.

Finally, the court finds that Chandler's blanket assertions of "negligence" on the part of Village officials collapse entirely into her allegations of due process violations under 42 U.S.C. § 1983. The court likewise grants summary judgment to all defendants on this claim.

## C. Mootness

In its motion for summary judgment, the Village briefly asserts that Chandler's claims are now moot, because construction on Chandler's garage continued "during all administrative reviews," and because her permit was eventually re-issued.

As the Supreme Court has explained:

> [V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot. A controversy may remain to be settled in such circumstances, *e.g.*, a dispute over the legality of the challenged practices. The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion. For to say that the case has become moot means that the defendant is entitled to a dismissal as a matter of right. The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement.

*United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)(citations omitted). Moreover, while "[c]ourts are more apt to trust public officials than private defendants to desist from future violations ... [t]he tendency to trust public officials is not complete ... nor is it invoked automatically." 13A CHARLES ALAN

-14-

WRIGHT ET. AL., FEDERAL PRACTICE AND PROCEDURE, § 3533.7 (2d ed. 1984). *See also Bell v. Wolfish*, 441 U.S. 520, 542 n.25 (1979); *Maher v. Roe*, 432 U.S. 464, 468 n.4 (1977).

Finally, "[c]laims for money damages ordinarily preclude a finding of mootness unless the parties have settled the case." *Gulf Pub. Co. v. Lee*, 679 F.2d 44, 46 n.2 (5th Cir. 1982). The Supreme Court reaffirmed this principle while denying a claim of mootness in *Powell v. McCormack*, 395 U.S. 486 (1969), the only case cited by the Village in support of its argument.

Because Chandler claims damages as compensation for alleged deprivations of her right to due process, and because of the lingering possibility that the Village might resume following its allegedly illegal procedures, the court finds that the construction on Chandler's garage does not require a finding of mootness.

**D.  Immunity**

In its motion for summary judgment, the Village asserts the defenses of absolute immunity and qualified immunity. Neither of these defenses absolves the Village of its potential liability in this case. Where questions of fact exist as to whether "a municipality itself is the cause of a constitutional deprivation, §1983 liability may lie against the municipality." *Hilliard v. Walker's Party Store,* 903 F. Supp. 1162, 1178 (E.D. Mich. 1995), citing *Monell v. New York City Dept. Of Soc. Svcs.*, 436 U.S. 658, 690 (1978). Although a municipality may not be held liable under §1983 based on *respondeat superior*, when a constitutional injury is inflicted by the implementation of the municipality's policy or custom, municipal officials can be held liable. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). In this case, Village officials clearly acted under "color of law" in undertaking the course of action alleged to constitute a due

-15-

process violation by Chandler.

The court has located no case in which the doctrine of absolute immunity has been extended to municipal officials in circumstances similar to the instant matter. As the Village observes, the doctrine exists largely to protect judges and federal executive officials from liability arising from their unique responsibilities. *See, e.g., Butz v. Economou*, 438 U.S. 478, 489-90 (1978).

The Village cites *Wood v. Strickland*, 420 U.S. 308, 95 S. Ct. 992 (1975) to support its assertion that public officials are entitled to qualified immunity for actions within their official duties. The Village overlooks the fact that the subjective aspect of qualified immunity was overruled in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727 (1982). In *Harlow*, the Court stated "[h]enceforth, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Id*. at 815-19. The court has already established that the facts presented in the record could allow a reasonable jury to determine that the Village's actions worked a deprivation of Chandler's right to due process.

Moreover, in *Owen v. City of Independence, Missouri*, 445 U.S. 622, 100 S. Ct. 1398 (1980), the Supreme Court held that a municipality was not free from liability under §1983 where a plaintiff's claims stem from a violation of the federal constitution. The *Owen* Court further held that a municipality cannot assert the good faith of its officers as a defense to a constitutional claim. *Id*. Pursuant to *Owen*, if the Village violated Chandler's constitutional rights it is not immune from liability.

**E. Chandler's Claims against Kamer and Hultin**

Chandler has not established that Kamer and Hultin acted in any respect "under color of law." Kamer and Hultin appear to have voiced their opposition to Chandler's garage unsolicited by Village officials. Any liability for wrongfully entertaining Kamer and Hultin's appeal would therefore attach to the Village. As such, the court finds that Chandler's claims against Kamer and Hultin are entirely without merit and dismisses them in their entirety.

**F. Kamer and Hultin's Counterclaims and Cross-Claims**

Having determined that summary judgment is proper on Chandler's claims against Kamer and Hultin, the court declines to exercise jurisdiction over the purely state-law claims advanced by the neighbors against Chandler. *See Pinney Dock & Transp. Co. v. Penn Cent. Corp.,* 196 F.3d 617, 620 (6th Cir., 1999)("district courts have broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims"), citing *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996).

The court likewise need not rule on Kamer and Hultin's cross-claim for indemnification against the Village. Kamer and Hultin sought indemnification for any damages they might be required to remit to Chandler; the entry of summary judgment in their favor means that no such damages will be assessed.

Finally, the court dismisses Kamer and Hultin's cross-claim for violations of 42 U.S.C. § 1983. Although Kamer and Hultin outline various alleged irregularities in the administrative processes followed by the Village (irregularities similar to those cited by Chandler in her due process claim), they fail to allege that they have suffered any direct harm as a result of the Village's actions. In fact, the record before this

court is devoid of any reference to harm of any kind suffered by Kamer and Hultin as a result of Chandler's architectural plans, however successful the latter may be. Kamer and Hultin therefore lack standing to bring a constitutional claim against the Village. "[I]f the plaintiff has not alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions no case or controversy is presented." *Urban Contractors Alliance v. Bi-State Dev. Agency*, 531 F.2d 877, 881 (8th Cir. 1976), quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962).

### III. Conclusion

For the foregoing reasons, this court denies Chandler's motions for summary judgment and grants the Village's motion for summary judgment in part. Chandler and the Village will commence discovery in preparation for trial on the sole issue of Chandler's due process claim. The court hereby sets a new trial date of October 31, 2005.

The court also grants summary judgment to Kamer and Hultin on the claims advanced against them by Chandler, and dismisses with prejudice both their counterclaims against Chandler and their cross-claims against the Village. With respect to Kamer and Hultin, this order is final and appealable.

IT IS SO ORDERED.

                                                      s/Ann Aldrich
                                                     ANN ALDRICH
                                                     UNITED STATES DISTRICT JUDGE

**Dated: August 15, 2005**